Bradbury, J.
The only question arising on the record relates to the effect to be given to the proceedings and judgment had in a former action between the same parties respecting the identical assessment assailed in the present action.
The record discloses that Mr. Emerson was the owner of a lot situated on the southwest corner of Molitor and Dallas streets, in the city of Cincinnati, fronting twenty-five feet and nine inches on Dallas street, and “running back on Molitor street, eighty-two feet;” that in 1888, the city council of Cincinnati adopted a resolution declaring the necessity of improving Molitor street, and in July following (1889), passed an ordinance providing therefor; which improvement was after-wards made and accepted by the city, and the cost thereof assessed upon abutting property according to its frontage on Molitor street — the street improved.
The true front of his lot being upon Dallas street, its owner, the defendant in error, brought the present action to restrain the city from collecting any greater amount than would be payable if the assessment should be computed according to the actual frontage of the lot on Dallas street, which, as we have seen, was twenty-five feet and nine inches.
To this claim for partial relief against the assessment the city interposed a plea of a former adjudi- ■ cation.
The cause was tried, upon this issue, in the court of common pleas. The court finding: That the plaintiff there, defendant here, in a former *138 action brought by him, on behalf of himself and others, had sought to enjoin the collection of the assessment, in toto, on the ground that the ordinance to provide for the improvement had not been lawfully .passed; because it “and six other ordinances to improve, having each been read three times on different days, and the question then and there being on their final passage, all seven of said ordinances were then and there, on. said day, voted upon together, without a separation or division of the question, and were finally passed together on said vote, and on one and the same roll-call of the yeas and nays, and by forty-seven favorable votes out of a membership of fifty members, and without any other or further vote or roll-call of the yeas and nays.”
The court found further, that this method of enactment did not render the ordinance invalid, and that the assessment based upon it was binding on the abutting property: — and, thereupon dismissed the plaintiff’s petition. This judgment, not having been reversed or set aside, was adjudged by the court of common pleas to constitute a bar.to the second action; which was brought, as we have seen, by the plaintiff below, to reduce the assessments placed upon his property on account of the same improvement, because, his, being a corner lot, was liable to assessment only upon such part of its length along the street improved, as was equal to its frontage on Dallas street, upon which last named street it in fact fronted.
The circuit court reversed this judgment, holding that the judgment in the first action was not a bar to the relief sought by means of the second action.
*139 It is apparent that the particular ground of relief set forth by the plaintiff below in his second action, was not in fact considered or passed upon by the court in the first action. It does not, therefore, fall within the principle that governed the decision of this court in Hixon v. Ogg, 53 Ohio St., 361. In that case, (Hixon v. Ogg, supra,) the precise issue determined in the first action, was sought to be relitigated in a subsequent action between the same parties, on the g-round that the subject matter of the two actions was different. This court, there, held against the right to relitigate the question. The syllabus was as follows: ‘ ‘Where issue has been joined on a material fact in an action, and the issue judicially determined and carried into judgment by a court having jurisdiction of the action, the parties to such action are concluded by such finding until the judgment is reversed or set aside. And the fact thus established cannot be retried by the same parties in any subsequent action, whether the second action is upon the same or a different subject matter from the first. In this respect, it is immaterial that one of the actions may have been ex contractu, and the other ex delicto.”
The estoppel invoked in the ease of Hixon v. Ogg, supra, (53 Ohio St., 361,) rests upon the principle, that where two parties have, in fact, joined issue upon some particular matter in a court clothed with jurisdiction over such matter, and over the persons of the contending parties, and the court has decided the matter and carried its decision into judgment, such matter must, thereafter, as long as the judgment remains in force, be deemed to be at rest as between such parties, and their privies. To hold otherwise, would be to open a *140 endless avenue to contention, contrary to the mandates of that enlightened public policy which seeks to secure the repose of the community by adopting rules on this subject that will prevent interminable, or vexatious prolongation of private contention in the courts of the country, even if the parties thereto were willing to maintain it. Independently of the interest of the public in limiting the period of contention among its members, the prevailing party has rights founded on principles of natural justice. If the defeated party, through the carelessness of himself or attorney, fails to bring to the attention of the court all the reasons or grounds favorable to his contention, he should not be permitted, again, on that account, to harass and vex his opponent by bringing forward in a second action, the omitted reasons or grounds. That the plaintiff did not, in the first action advance all his grounds of relief, was his own fault, and the consequences of this omission, should be borne by him, and not by his opponent who was without fault in the matter. Ewing v. McNairy & Clafflin, 20 Ohio St., 315.
The justice and wisdom of the rule that denies a relitigation of facts that have been previously decided in a former action between the same parties, is quite apparent, and appears to be generally conceded by all the authorities.
The estoppel relied on in this action, does not rest, however, as has been already noticed, on that particular principle, though it does rest upon that same general principle of public policy, that seeks to confine within a reasonable period of time, the duration of litigation, and also upon the same notion, that justice to the prevailing party requires that he should not be subjected to the *141 burden of maintaining bis rights a second time, on account of the negligence or caprice, or by the election of his defeated opponent.
This doctrine does not prevent the defeated party from applying to the court in the same action to be relieved from a judgment against him, where, without fault, he has been prevented from prosecuting or defending an action. If a party who, by negligence chargeable to him, has failed to bring forward all the reasons or grounds upon which his claim or defense rests, should not be allowed to advance them in a new action, by far stronger reasons should this privilege be denied to one, who from choice in his first action, withholds some of the grounds upon which his claim or defense might be made to rest.
What was the situation of Mr. Emerson in reference to the assessment against his lot at the time he began his first action?
The assessment was an entirety; he had two distinct grounds of attack upon it. One of which was a denial of the validity of the ordinance providing for the improvement.
If this ground was well founded, it would defeat the assessment in toto; and from its nature was available to every lot owner along the line of the improvement, and all of them might therefore be joined in an action which advanced it as a ground of relief against the assessment. Mr. Emerson, however, had another ground for assailing the assessment, which was open only to him, as it rested on the peculiar situation of his lot, being a corner lot, and so far as the record discloses, the only one along the line of improvement.
Doubtless, to one thus situated, it would be a valuable privilege, if the law granted it, to first *142 bring an action to totally destroy the assessments and join with him the owners of all the other abutting property, and then, in case this action should fail, fall back upon the other ground peculiar to his lot, and bring a second action in his own name, only, to reduce the amount of the assessment against it.
We think sound reason denies to him this privilege. He doubtless had an election between two courses of procedure; he could join with him in an action all abutting proprietors, and jointly, with them, assail the validity of the ordinance that authorized the improvement; or, he could bring an action in his own name, and for himself only, in which both grounds open to him, of attack upon the assessment, could be advanced. Having’ made his election, he should be held bound by his choice of remedies.
The principle which relates to the question of dividing, or splitting, a cause of action by a plaintiff and of advancing only a part of the defenses available to a defendant, has recently received a good deal of attention, by both text-writers and courts. Van Fleet in his redent work on Former Adjudication, has devoted to these two subjects nearly three hundred pages of interesting discussions: Wells’ Res Adjudicata, chap. XX; Black on Judgments, chap. XIX; A treatise on the law of Res Judicata, Huk’m. Chand., M. A., (an East Indian author,) section 86, et seq.; Stark v. Starr, 94 U. S., 477; Breeze, Co. Treas., v. Haley, 11 Colo., 351; Rueger et al. v. R. R. Co., 103 Ill, 449. The list might be indefinitely extended. They certainly establish the general rule: That complainants cannot “divide their cause of action, setting up one ground of illegality in that suit, and, if they failed in that, bring a second suit for a like *143 purpose, setting- up another ground of illegality. They should have disclosed their entire wealth of their ease at once. ” Pribble v. Board, 8 Biss., 358.
In the cases cited, the effect to be given to the circumstance, that in the former action the plaintiff had joined with him other parties, while the second action was brought in his own name, and for his own benefit, only, was not discussed, as the question does not appear to have been made. We think, however, that the principles stated as the foundation of our decision of the case under consideration, properly apply, notwithstanding that he, in his first action, joined with him other parties. He did this, as we have seen, at his own election; to enable him to do so, he omitted from his petition in that action, the particular grounds of relief advanced in the second action. Having deliberately chosen between two courses open to him, we think he should be bound by his election, and that the privilege of vexing the defendant by a second action, is denied to him by the principles herein, before announced.
While the previous decisions of this court do not cover the precise question involved here, we think they are not only in harmony with the conclusions reached by us, but that the principles on which those decisions rest, fairly lead up to this one. Ewing v. McNairy & McClafflin, 20 Ohio St., 315; Roby v. Rainsberger, 27 Ohio St., 674; Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St., 233; Petersine v. Thomas, 28 Ohio St., 596; Martin v. Roney, 41 Ohio St., 141.
Judgment of circuit court reversed, and that of the court of common pleas affirmed.